UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AVERSAN USA, INC., a
New Jersey Corporation,

    Plaintiff,

  v.

STEVEN R. JONES, an
individual; MERHAWIT MELLSE,
an individual; and DOES 1-10,

    Defendants.

No. 2:09-cv-00132-MCE-KJM

MEMORANDUM AND ORDER

----oo0oo----

On January 14, 2009, Plaintiff Aversan USA, Inc. ("Aversan") filed this action against Defendants, Steven R. Jones ("Jones") and Merhawit Mellse ("Mellse") (collectively referred to as "Defendants"), alleging eight causes of action.  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims for 1) Interference with Contractual Relations; 2) Interference with Prospective Economic Advantage Against Jones; 3) Breach of Duty of Loyalty Against Defendants; and 4) Violation of California Business and Professions Code §§ 17200 et seq. pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the reasons set forth below, the Defendants' Motion to Dismiss is DENIED.

---

[1] Unless otherwise stated, all further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1

**BACKGROUND**[2]

According to Plaintiff's Complaint, Aversan is a premier solution provider of on-site and off-site software engineering services.  Aversan recruits and trains engineering professionals to perform services for its customers and clients of its customers.  In particular, engineering professionals recruited by Aversan receive training with Dimension Software, a program that provides individualized, custom services to Aversan customers and their clients.  Over the years, Aversan has developed several proprietary scripts for use with the Dimension Software (the "Aversan Application").  Aversan teaches its employees and independent contractors how to write the Aversan Application to provide individualized services on specific projects.

One customer Aversan contracts with is Ambire Consulting, Inc., ("Ambire"), a domestic technology company offering consulting, management and outsourcing services.  Pursuant to the ongoing agreements between Aversan and Ambire, Ambire pays Aversan for each hour of work performed by Aversan's engineering professionals for Ambire's clients.  In turn, Aversan pays its engineering professionals a portion of this hourly rate, bears the cost of all expenses incurred by the engineering professionals, and retains the remaining sum paid to it by Ambire as profit.

///
///

---

[2] The following alleged facts are derived from Plaintiff's Complaint.

1    In 2004, Aversan recruited Jones as an independent
2 contractor to provide engineering services to Aversan's existing
3 and potential customers.  Mellse was recruited in the same
4 capacity the following year.  Aversan trained both Jones and
5 Mellse how to write proprietary scripts for the Aversion
6 Application.  On or about February 15, 2007, Jones and Aversan
7 agreed to modify their working relationship from
8 principal/independent contractor to employer/employee.  On or
9 about March 2, 2007, Mellse also agreed to modify her contract
10 with Aversan from principal/independent contractor to
11 employer/employee.
12    In or about January 2007, Aversan assigned Mellse to work
13 for the California Public Employees' Retirement System
14 ("CalPERS"), a customer of Aversan's client Ambire.  In or about
15 September 2007, Aversan also gave Jones a CalPERS assignment.  As
16 part of the compensation provided to Jones, Aversan, among other
17 things, acquired an apartment lease at Capitol Towers & Villas in
18 Sacramento, California, for Jones' benefit.  While assigned to
19 CalPERS, Aversan claims that both Jones and Mellse wrote
20 individualized, customer-specific scripts using the proprietary
21 information provided by Aversan for use on the Dimension Software
22 program.
23    On or about October 26, 2008, Jones indicated that he wanted
24 to terminate his employment with Aversan and demanded a higher
25 salary.  The parties underwent negotiations.  Aversan alleges
26 that Jones was negotiating a similar arrangement with Ambire at
27 the same time.  On or about November 1, 2008, Jones terminated
28 his employment with Aversan immediately.

3

On or about December 6, 2008, Mellse also quit.  Aversan alleges that since terminating their employment with Aversan, Defendants have continued to perform the same engineering services at CalPERS as consultants of Ambire using the Aversan Application.

Aversan also contends that Defendants prevented Aversan from participating in and profiting from its agreements with Ambire, that Defendants started working directly with Ambire prior to terminating their employment with Aversan, that Jones intended to take over Aversan's operations with CalPERS and other Aversan customers, and that Defendants have falsely represented to CalPERS that they continue to work for Aversan.  Further, despite paying rent for November 2008 for the apartment unit occupied by Jones, Jones allegedly encouraged and convinced Capitol Towers & Villas to terminate its lease with Aversan and re-let the same apartment unit to Jones directly.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

4

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

**ANALYSIS**

**1.   The California Uniform Trade Secrets Act & Preemption.**

Defendants' Motion to Dismiss asserts that Aversan's Second, Third, Fourth and Eighth Claims for Relief fail to state a claim for relief because the claims are preempted by the California Uniform Trade Secret Act, Cal. Civ. Code §§ 3426, et seq. ("CUTSA"). CUTSA "... preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc., 171 Cal. App. 4th 939, 958 (6th Dist. 2009) (quoting Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).

///

1  See also, <u>Axis Imex, Inc. v. Sunset Bay Rattan, Inc.</u>, No. C 08-
2  3931 RS, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) (finding
3  that "[p]reemption is not triggered where the facts in an
4  independent claim are similar to, but distinct from, those
5  underlying the misappropriation claim."); <u>AccuImage Diagnostics
6  Corp. v. Terarecon, Inc.</u>, 260 F. Supp. 2d 941, 954 (N.D. Cal.
7  2003) (holding that common law claims based on misappropriation
8  of trade secrets are preempted by CUTSA); <u>Callaway Golf Co. v.
9  Dunlop Slazenger Group Americas, Inc.</u>, 318 F. Supp. 2d 216, 219
10 (D. Del. 2004) (interpreting CUTSA and preempting claims that
11 were "based entirely on the same factual allegations that
12 form[ed] the basis of [the] trade secret claim.").
13      Aversan's Misappropriation of Trade Secrets cause of action,
14 its Fifth Claim for Relief, alleges that Defendants:
15 (1) continued to use Aversan's proprietary and confidential
16 information while continuing to perform work for Ambire and
17 CalPERS after terminating their employment with Aversan; and
18 (2) used the information to solicit employees, contractors and
19 recruits.  Compl. ¶ 60.  Thus, to the extent that Aversan's
20 Second, Third, Fourth and Eighth Claims for Relief do not rely on
21 the "same nucleus" of factual allegations underlying Aversan's
22 Misappropriation of Trade Secrets Claim, the claims are not
23 preempted and survive Defendants' Motion to Dismiss.  Each of
24 these claims will now be considered with respect to whether they
25 constitute an independent cause of action that survives CUTSA
26 preemption.
27 ///
28 ///

    **2.    Aversan has adequately demonstrated, for pleading purposes, a claim of interference with contractual relations against Defendants.**

Aversan's Second Claim for Relief alleges that Defendants interfered with its contractual relations. To establish its interference with contract claim, Aversan needs to plead that: (1) there was an existing contract between Aversan and a third party; (2) Defendants knew of the contract; (3) Defendants intentionally acted to induce a breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage. <u>Quelimane Co., Inc. v. Stewart Title Guar. Co.</u>, 19 Cal. 4th 26, 55 (1998). As factual support for its interference claim, Aversan claims that: (1) it had a lease agreement with Capitol Towers; (2) as an occupant of the apartment leased by Aversan, Jones knew of the lease; (3) Jones encouraged and convinced Capitol Towers & Villas to terminate its lease with Aversan and re-let the same apartment unit to Jones directly; (4) Aversan has not since had use of the apartment; and (5) Aversan incurred costs locating other housing for its workers. Compl. ¶¶ 27, 41. This is sufficient for purposes of stating a claim for interference with contract without relying on the same nucleus of facts as Aversan's Misappropriation of Trade Secrets Claim.

///
///
///
///
///

7

Aversan also claims interference with its agreement with Ambire with respect to the work performed for CalPERS. Specifically Aversan alleges that: (1) Aversan receives continuing payments based upon the number of hours the placed employee works with a third party per an agreement with Ambire ("Ambire Agreement"); (2) Jones and Mellse knew of the Ambire Agreement with respect to work performed for CalPERS because of their CalPERS assignment; (3) Defendants prevented Aversan from participating in and profiting from its agreements with Ambire by working directly with Ambire on projects for CalPERS; (4) Defendants now retain Aversan's position with respect to the work performed for CalPERS; and (5) Aversan recovers nothing from the Ambire Agreement with respect to the work performed for CalPERS. Compl. ¶¶ 10, 36, 39. This, too, is sufficient for purposes of stating a claim for interference with contract without relying on the same nucleus of facts as Aversan's Misappropriation of Trade Secrets Claim. Accordingly, Defendants' Motion to Dismiss the Second Claim for Relief fails.

### 3. Aversan's Third, Fourth and Eighth Claims for Relief also survive.

Aversan alleges interference with prospective economic advantage against Jones in its Third Claim for Relief. To state a claim for interference with prospective economic advantage Averson must plead that: (1) Aversan and a third party were in an economic relationship that probably would have resulted in a future economic benefit to Aversan; (2) Jones knew of the relationship; (3) Jones intentionally acted to disrupt the relationship;

8

(4) the relationship was disrupted; and (5) Aversan was harmed. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003). With respect to the third element, Aversan must also plead that Jones' acts were "wrongful apart from the interference itself." Korea Supply, 29 Cal. 4th at 1154 (citing Della Penna v. Toyota Motor Sales, USA., Inc., 11 Cal. 4th 376, 393 (1995)).

In Korea Supply, the California Supreme Court concluded that "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1159. The Court went on to say that for purposes of its decision in Korea Supply, it did not need to "further define which sources of law can be used to determine whether a defendant has engaged in an independently wrongful act, other than to say that such an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive." Id. at 1159 n.11.

In support of its Third Claim, Aversan alleges that: (1) even though Aversan did not have a direct contract with CalPERS, it did have an economic expectancy when Defendants were assigned to CalPERS ("CalPERS expectancy") (Compl. ¶¶ 10, 39); (2) having been assigned to work for CalPERS, Jones knew of the relationship (Compl. ¶ 36); (3) Jones deceptively and falsely represented to CalPERS that he continued to work for Aversan and could provide the same benefits and uninterrupted quality of service previously provided by Aversan; Jones prevented Aversan from participating in and profiting from its agreement with Ambire by working directly with Ambire on projects for CalPERS;

(Compl. ¶¶ 25, 39); (4) Aversan lost the CalPers expectancy (Compl. ¶ 39); and (5) Aversan recovers nothing with respect to the work performed for CalPERS (Compl. ¶ 39).

Given that the acts alleged above appear to be both intentional and wrongful by some legal measure other than the fact of interference itself, and that Aversan's allegations underlying its Third Claim for Relief do not rely on the same factual nucleus as its Misappropriation of Trade Secrets Claim, Aversan's claim for interference with prospective economic advantage against Jones survives dismissal.

The Fourth Claim for Relief alleges that the Defendants breached their duty of loyalty to Aversan. "An employee, while employed, owes undivided loyalty to his employer." Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 410 (6th Dist. 2007) (citing Fowler v. Varian Assocs., Inc., 196 Cal. App. 3d 34, 41 (6th Dist. 1987)). An employer may have a cause of action for breach of duty of loyalty "when the employee takes action which is inimical to the best interests of the employer." Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (3rd Dist. 1995). To claim a breach of duty of loyalty Aversan must plead: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damages proximately caused by that breach of duty. Huong Que, 150 Cal. App. 4th at 410.

///
///
///
///

10

1    In support of its breach of duty of loyalty cause of action,
2 Aversan claims that Defendants, while its employees, prevented
3 Aversan from participating in and profiting from its agreements
4 with Ambire by working directly for Ambire and interfered with
5 the CalPERS expectancy by usurping Aversan's position with
6 CalPERS.  Compl. ¶¶ 22, 38-39.  Aversan also claims that Jones
7 encouraged and convinced Capitol Towers & Villas to terminate its
8 lease with Aversan, which Aversan had already paid for that
9 month's rent as an employee benefit to Jones, and re-let the same
10 apartment unit to Jones directly.  Compl. ¶ 27, 41.  These
11 allegations do not rely on the same nucleus of facts as Aversan's
12 Misappropriation of Trade Secrets Claim and sufficiently state an
13 independent claim for relief.  Thus, Aversan's Fourth Claim for
14 Relief also survives dismissal.

15    In its Eighth Claim for Relief, Aversan alleges a statutory
16 unfair competition claim pursuant to California Business and
17 Professions Code § 17200.  Section 17200 provides, in relevant
18 part, that unfair competition includes, "any unlawful, unfair or
19 fraudulent business act or practice."  "By proscribing 'any
20 unlawful' business practice, section 17200 borrows violations of
21 other laws and treats them as unlawful practices that the unfair
22 competition law makes independently actionable."  <u>Cel-Tech
23 Comms., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163,
24 180 (1999) (citation and internal quotation marks omitted).

25    In support of its unfair competition cause of action,
26 Aversan alleges that Defendants made false representations to
27 CalPERS and interfered with Aversan's contract with Ambire, with
28 the CalPERS expectancy, and with Aversan's Capitol Tower's lease.

11

Compl. ¶¶ 22, 38-39, 41. Since the Court finds that Aversan has stated claims for interference with contractual relations, interference with prospective economic advantage against Jones, and breach of duty of loyalty, based on the same factual allegations discussed in detail above, and without relying on the same nucleus of facts as its Misappropriation of Trade Secrets Claim, Defendants' Motion to Dismiss Aversan's Eighth Claim for Relief also fails.[3]

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Second, Third, Fourth and Eighth Causes of Action is DENIED.[4]

Dated: June 23, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff argues that even aside from the issue of preemption, it should be permitted to plead these claims as alternative theories to their Fifth Claim under CUTSA. Because, as set forth above, the Court finds that the claims are not preempted, it is not necessary to address that alternative argument, and the Court decides not to do so.

[4] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

12